IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ELBA R.,                                    )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        1:25CV192
                                            )
FRANK BISIGNANO,                            )
Commissioner of Social Security,[1]         )
                                            )
                    Defendant.              )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Elba R. ("Plaintiff") brought this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on February 21, 2022, alleging a

disability onset date of January 1, 2021. (Tr. at 1, 244-50.)[2] Plaintiff's application was denied

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

initially (Tr. at 69-75, 90-101) and upon reconsideration (Tr. at 76-84, 103-110). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 111-12.) On September 13, 2023, Plaintiff, along with her attorney, attended the subsequent video hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 19, 41-68.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 35), and on February 6, 2025, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-8).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims."  Hancock,

667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).  "Under this process, the

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not,

could perform any other work in the national economy."  Id.

A finding adverse to the claimant at any of several points in this five-step sequence

forecloses a disability designation and ends the inquiry.  For example, "[t]he first step

determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is

working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.

If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if

the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant

is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two,

but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or

exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

capacity ('RFC')."  Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d
at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-
related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8
hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks
omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's
"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations
(mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after
[the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."
Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 21-22.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> [D]egenerative disc disease; psoriatic arthritis; chronic pain; migraines; obesity; and major depressive disorder[.]

(Tr. at 22.) The ALJ found at step three that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing. (Tr. at 23-26.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following additional limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours and stand and/or walk for six hours in an eight-hour workday. She requires the option to alternate between sitting and standing at

5

15-minute intervals. [Plaintiff] can frequently balance, as that term is defined in the Dictionary of Occupational Titles[,] and can occasionally stoop. She can frequently kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to moving machinery, hazardous machinery, unprotected heights, and loud noise. [Plaintiff] can understand, remember, and carry out simple instructions and can have occasional interaction with the general public.

(Tr. at 26-27.) At step four of the analysis, the ALJ found, based on the vocational expert's testimony, that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 33.) However, the ALJ further determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 33-34.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 35.)

Plaintiff now contends that the ALJ failed to properly consider the effect of absenteeism due to frequent medical treatment and migraines on Plaintiff's ability to work. As set out above, the RFC measures a claimant's ability to do sustained work-related physical and mental activities in a work setting "on a regular and continuing basis," 20 C.F.R. §§ 404.1545(b) and (c) (emphasis added). This "'means 8 hours a day, for 5 days a week, or an equivalent work schedule,'" Hines, 453 F.3d at 562 (emphasis omitted) (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (July 2, 1996) ("SSR 96-8p")). When making an RFC determination, the ALJ must take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, at *5. Accordingly, "[a]bsenteeism due to the frequency of treatment is a relevant factor so long as the treatment

6

is medically necessary and concerns the conditions on which the disability claim is founded." Griffin v. Commissioner of Soc. Sec., No. 2:15CV13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017).

In the present case, Plaintiff's attorney specifically argued in his closing before the ALJ that Plaintiff's frequent absences for required medical treatment and migraines formed the crux of her disability claim. (Tr. at 67.) The ALJ later included at least some discussion of Plaintiff's migraines and their effect on her functioning in the administrative decision. However, she omitted any reference to Plaintiff's extensive medical appointments throughout the relevant time period at issue, and failed to address how these frequent appointments would affect Plaintiff's ability to work. This failure requires remand.

As highlighted by Plaintiff in "an abridged summary of [her] extensive physical treatment," the record shows that Plaintiff attended just shy of one hundred medical appointments between her alleged onset date, January 1, 2021, and the date of her administrative hearing, September 13, 2023. (Pl.'s Br. [Doc. #11] at 6-16.) In other words, Plaintiff averaged three medical appointments per month for treatment of her physical impairments during the alleged disability period. These appointments included testing and treatment regarding a tumor/lesion on Plaintiff's spine, epidural steroid injections, intramuscular Toradol injections, sacroiliac joint injections, and branch blocks for Plaintiff's spine pain, physical and occupational therapy for Plaintiffs spine, and pain management services, with records reflecting a history of spinal surgery and with MRIs reflecting "severe facet arthropathy with the intraforaminal disc herniation at L4-5 level along with translation of the L5-S1 level laminectomy" (Tr. at 425), "[nerve root] compression at L4, L5 and S1" (Tr.

7

at 379), and "collapse L4/5, possible start of bone bridging anteriorly . . . [s]ome deformity right L5/S1 lamina in area of prior laminectomy . . severe L4/5 facet [degenerative disc disease]" (Tr. at 821) and recent surgical implantation of a spinal cord stimulator (Tr. at 1600). These appointments also include regular rheumatology and pain management visits for treatment of Plaintiff's psoriatic arthritis flares, including golimumab infusions and "immunosuppressant medication that requires intensive monitoring" (Tr. at 834), with swollen and painful joints in her hands. Moreover, this average of three appointments per month does not include the additional treatment for Plaintiff's mental impairments, which began in January 2022 and took place approximately once a month. (Pl.'s Br. at 16-17.) Notably, the ALJ categorized all of the impairments treated at these appointments, both physical and mental, as "severe" at step two of the sequential analysis, indicating that they were "conditions on which [her] disability claim [was] founded." (See Tr. at 22); Griffin, 2017 WL 991006, at *2.

Plaintiff further argues that the ALJ's failure to consider her need for frequent medical treatment was harmful, given the testimony of the vocational expert regarding absenteeism. Specifically, the following exchange occurred between Plaintiff's attorney and the expert near the end the Plaintiff's hearing:

> Q      If the hypothetical individual, due to either some combination of migraines or frequent medical appointments, were regularly absent two or more times per month, would that affect any of the jobs that you cited?
>
> A      Yes. At the unskilled level, employers typically tolerate one absence per month. Anything more than that would be work preclusive.
>
> Q      And at the semi-skilled level?
>
> A      Semi-skilled, I would assign a range of between one to two absences per month.

Q     And so if there were absences of three or more, there would be no jobs?

A     Correct.

(Tr. at 66-67.)  Ultimately, the ALJ in this case failed to include any reference to this testimony in her decision.  In fact, she did not acknowledge Plaintiff's frequent medical treatment in any way, let alone cite reasons for discounting the necessity of such treatment.

In a similar case, this Court remanded where the ALJ failed to address how ongoing enzyme infusions to treat Gaucher's Disease would impact Plaintiff's ability to work:

> [I]n assessing Plaintiff's RFC, the ALJ did not consider effects of treatment, including limitations or restrictions imposed by the mechanics of treatment related to Plaintiff's bi-weekly infusions . . . as required by SSR 96-8p, and did not obtain evidence from the vocational expert regarding the availability of employment in light of those limitations. Given the ALJ's failure to address or consider this issue at all, substantial evidence fails to support the ALJ's decision, and remand is required to allow the ALJ to consider the effect of Plaintiff's treatment on her ability to work.

Shoemaker v. Saul, No. 1:19CV441, 2020 WL 5117992, at *6 (M.D.N.C. Aug. 31, 2020) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 15, 2020) (Schroeder, C.J.). In that case, Defendant argued, in part, that medical appointments were not an appropriate consideration for assessing a claimant's RFC.  Here, the Commissioner echoes that argument, asserting that Plaintiff "has not shown her medical appointments actually would result in absences from work." (Def.'s Br. [Doc. #16] at 7.)  The Commissioner further asserts that,

> the ALJ is not bound by the number of medical appointments the claimant attends during the period at issue when determining how frequently she would be absent from work.  Indeed, "[i]f the sheer number of medical visits were sufficient on its own, claimants could manufacture their own disabilities simply by going to the doctor as often as possible for any or no reason." Hoppa v. Colvin, No. 12-CV-847-BBC, 2013 WL 5874639, at *5 (W.D. Wis. Oct. 31, 2013).
> . . .

Case 1:25-cv-00192-JEP     Document 17     Filed 03/26/26     Page 9 of 15

> Other relevant considerations include whether the claimant's appointments were scheduled, whether the claimant would miss an entire day of work for each appointment, and whether the claimant could schedule her appointments outside of working hours. See, e.g., Best v. Berryhill, 730 F. App'x 380, 382 (7th Cir. July 11, 2018) (rejecting claimant's absenteeism argument as "frivolous" because he failed to "point to anything in the record to suggest that his appointments would require him to miss a full day of work or that he could not schedule his appointments outside of working hours.")[.]

(Def.'s Br. at 8-9.) However, as in Shoemaker, there is no evidence that the ALJ in the present case considered these possibilities, let alone questioned Plaintiff about them or presented them as hypothetical questions to the vocational expert at step five of the sequential analysis. See Kim J.H. v. Saul, No. 18CV2736, 2020 WL 872308, at *11 (D. Minn. Jan. 28, 2020) ("It may be that Plaintiff is not entitled to a period of closed disability for some or all of these 33 months, whether due to . . . an employer's tolerance for full and half days, or some other reason. Or, based on the record as a whole, it may be that Plaintiff would be absent from work less than two days per month, which the vocational expert testified would be tolerated by an employer. These considerations, and the Commissioner's arguments as to the precise period of time in which Plaintiff may be eligible for disability benefits, are best addressed by the ALJ and the vocational expert in the first instance. Considering the evidence in the record regarding the extent and frequency of Plaintiff's treatment, the ALJ must explain how this course of treatment is reconcilable with the vocational expert's testimony regarding tolerated absences in a manner that allows the Court to determine whether the ALJ's conclusion that Plaintiff would not be absent two or more days per month is supported by substantial evidence in the record as a whole." (internal citations omitted)). To undertake this analysis in the first instance would usurp the ALJ's role as fact finder. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds

10

upon which the record discloses the action was based); <u>Anderson v. Colvin</u>, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (noting that this Court's "[r]eview of the ALJ's ruling is limited further by the so-called '<u>Chenery</u> Doctrine,' which prohibits courts from considering <u>post hoc</u> rationalizations in defense of administrative agency decisions. Under the doctrine, a reviewing court must judge the propriety of [agency] action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." (quotations and citations omitted)).

The Fourth Circuit made a similar distinction in <u>Meyer v. Astrue</u>, 662 F.3d 700, 707 n.3 (4th Cir. 2011). There, the record indicated that the plaintiff attended more than 170 post-surgery physical therapy sessions during the relevant period, yet the ALJ failed to consider the effect of this treatment on Plaintiff's RFC. The Fourth Circuit, "[f]ollowing the lead of the Fifth Circuit in <u>Newton v. Apfel</u>, 209 F.3d 448, 459 (5th Cir. 2000), . . . instruct[ed] the Commissioner on remand to 'consider the effect of this ongoing treatment on [the plaintiff's] ability to remain gainfully employed during the period of claimed disability.'" <u>Meyer</u>, 662 F.3d at 707 n.3.

More recently, in <u>Dennis v. Kijakazi</u>, No. 21-2078, 2023 WL 2945903, at *1-2 (4th Cir. Apr. 14, 2023), the Fourth Circuit addressed the impact of a less predictable treatment schedule, noting that the plaintiff "was admitted four times out of her six ER visits, for a total of 24 days (17 weekdays) in 2016 and 11 days (9 weekdays) in 2018" due to her impairments. Ultimately, the court reached the same conclusion as in ongoing treatment cases. In all instances, two factors remain paramount. First, ALJs must follow the directives of SSR 96-

8p, which involves considering the effects of treatment, including its frequency, duration, and its disrupting influence on a claimant's routine. See SSR 96-8p, 1996 WL 374184, at *5. Second, where such factors are present in the record, ALJs must discuss the relevant evidence in a way that permits meaningful judicial review. In Dennis, the Fourth Circuit concluded that

> the ALJ's failure to discuss the record evidence regarding [the plaintiff's] absenteeism results in [the court's] inability to provide meaningful review. There is evidence supporting [the plaintiff's] need to miss work in the administrative record, and the ALJ's decision does not discuss this evidence, nor does the ALJ's decision adequately explain why the evidence should be rejected. Indeed, the ALJ did not offer any reasons for rejecting or discounting the frequency of [the plaintiff's] medical treatment. Nowhere in the denial did the ALJ address: (1) the frequency of [the plaintiff's] medical treatment, (2) how the frequency of [the plaintiff's] medical treatment would impact absenteeism, or (3) how [the plaintiff's] frequent medical treatment would impact the VE's testimony that missing more than 7 to 10 days per year would be subject to firing. This was error because [the court] can only guess why the ALJ failed to address the obvious implications of [the plaintiff's] frequent medical treatment.

Dennis, 2023 WL 2945903, at *5 (internal quotation marks and parenthetical citation omitted).

Notably, in the present case, the Commissioner repeatedly stresses that Plaintiff maintains the burden of proof regarding her RFC, including whether she could sustain full-time work due to the frequency of her medical appointments. (Def.'s Br. at 11-12.) He contends that Plaintiff "has not demonstrated that her medical appointments would consume a full day or could not be scheduled around work." (Id. at 11.) This argument misses the mark. As previously explained, Plaintiff's treatment record and her attorney's arguments clearly raised the issue of whether her frequency of treatment interfered with her ability to perform full-time work. It may be that Plaintiff has not made a showing sufficient to prove this. Again, the problem in this case, as in Shoemaker, Meyer, and Dennis, is that the

12

administrative decision before the Court—the Court's only basis for review—does not show that the ALJ considered the underlying evidence or its effect in the first instance.

Finally, Defendant asserts that "the record showed Plaintiff worked successfully for many years despite frequently attending medical appointments." (Def.'s Br at 10) (citing Tr. at 889) ("[Plaintiff] says 18 years ago she had back surgery and since that time she's been coming to the doctor for different therapies to help with pain. She spent many years going to the doctor every month and sometimes every week."). The ALJ made no mention of this in her decision, let alone indicated that she relied on it in discounting Plaintiff's allegations of absenteeism. Moreover, Plaintiff's attorney specifically addressed the issue of past and ongoing absences in the closing:

> Your Honor, I believe what we have here is somebody with such severe limitations that there would be frequent periods off-task and/or significant absences. That is, in fact, what her employer has found. They are a self-insured. I think you see in the evidence, some statements from Clorox, which is the parent company of Burt's Bees. They ended up putting her out due to her frequent absences and inability to maintain a schedule. And so I think we're looking at a 96-8p [situation], if not a med[ical]-voc[ational one].

(Tr. at 67.) Earnings records indicate that [Plaintiff] worked for the same employer, Burt's Bees, from 2003 until her alleged disability onset date of January 1, 2021. (Tr. at 280-83.) Thus, the vast majority of the 18 years in question fell within Plaintiff's employment with Burt's Bees, yet her absences only reached a disabling level in 2021. In other words, evidence of Plaintiff's long-term history of missing work for medical reasons supports, rather than undermines, her argument in the present case. Indeed, the record reflects that Burt's Bees concluded that Plaintiff was disabled in 2021, and Plaintiff testified at the hearing that she was receiving disability benefits through Burt's Bees (Tr. at 59, 67, 255, 257-62, 360.)

Case 1:25-cv-00192-JEP    Document 17    Filed 03/26/26    Page 13 of 15

Where, as here, the record clearly raised the issue of work absences for medical treatment, and Plaintiff's counsel specifically relied upon that issue at the hearing as the basis for finding disability, and Plaintiff's long-term employer apparently concluded that Plaintiff was disabled for that very reason, the ALJ's failure to address the issue at all leaves the Court without sufficient basis to follow the ALJ's reasoning. Of course, as the Commissioner suggests, there may be multiple reasons why this issue may not be work-preclusive. The ALJ could conclude that Plaintiff's medical treatment involves scheduled appointments that could be scheduled outside of work hours, as the Commissioner suggests, and the ALJ could obtain testimony from the vocational expert reflecting the job numbers for second or third shift or the availability of weekend shifts that would leave weekdays free for scheduled appointments, or the ALJ could obtain testimony about the number of part-day absences allowed for medical appointments. These are all matters for the ALJ to consider in the first instance, and there is no indication here that the ALJ considered or addressed the issue at all.

Because the ALJ's failure to adequately consider the impact of absenteeism due to frequent medical appointments requires remand, the Court need not reach the further, related issue of absenteeism due to migraines. All potential sources of missed work and off-task behavior can be considered by the ALJ on remand in accordance with SSR 96-8p.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that Defendant's

14

Dispositive Brief [Doc. #16] is DENIED, and Plaintiff's Dispositive Brief [Doc. #11] is GRANTED to the extent set forth herein.

This, the 26th day of March, 2026.

Joi Elizabeth Peake
United States Magistrate Judge